Hay, Judge,
delivered the opinion of the court:
This is a claim against the United States for the sum of $5,209.83, and is alleged to be based upon the provisions of the Dent Act, 40 Stat., 1272, which in part reads as follows :
“ That the Secretary of War be, and he is hereby, authorized to adjust, pay, or discharge any agreement, express or implied, upon a fair and equitable basis that has been entered into, in good faith during the present emergency and prior to November twelfth, nineteen hundred and eighteen, by any officer or agent acting under his authority, direction, or instruction, or that of the President, with any person, firm, or corporation for the acquisition of lands, or the use thereof, or for damages resulting from notice by the Government of its intention to acquire or use said lands, or for the production, manufacture, sale, acquisition or control of equipment, materials or supplies, or for services, or for facilities, or other purposes connected with the proseen *189 tion of the war, when such agreement has been performed in whole or in part, or expenditures have been made or obligations incurred upon the faith of the same by any such person, firm, or corporation prior to November twelfth, nineteen hundred and eighteen, and such agreement has not been executed in the manner prescribed by law.”
It will be observed that the statute is specific in reciting for what the United States will pay when an agreement express or implied ” has been entered into by any officer or agent acting under the authority, direction, or instruction of the Secretary of War or of the President. The United States will pay “ for the acquisition of land, or the use thereof, or for damages resulting from notice by the Government of its intention to acquire or use said lands, or for the production, manufacture, sale, acquisition or control of equipment, materials, or supplies, or for services, or for facilities, or other purposes connected with the prosecution of the war.”
The claim of the plaintiff is for none of these things.
The first item of the claim is that the United States should pay the plaintiff the amount, of money which it has paid to its employees while those employees were idle and were rendering no service to the Government. Those employees were hired by the plaintiff to carry out its contract with the United States, and if they were kept in idleness by the plaintiff, the plaintiff did it on its own responsibility and because it thought that it was to its interest to do so. No officer or agent of the Government authorized to clo so made any agreement with the plaintiff to reimburse it for money so expended, and no such officer or agent was authorized to make any such agreement. The president of plaintiff company was on the site of the work as early as June 25, 1918, and had every opportunity to find out when the sheds would be ready for roofing. If he kept his employees idle he did it with full knowledge of all the conditions, and can not reasonably ask that the United States pay for services which it did not receive and which were not performed.
The second item of the plaintiff’s claim is for money expended by it in assembling a roofing crew. This crew was not at the site of the work; was never there. It can not be said that the services of the agents of the plaintiff in assem *190 bling the roofing crew were services performed for the benefit of the United States; they were distinctly services performed for the benefit of the plaintiff. No officer or agent of the United States entered into any agreement with the plaintiff with regard to these services, nor was any officer or agent of the United States authorized to make any such agreement.
The third item of the claim is for extra pitch used to complete the work. At the time the extra pitch was used there was no' agreement made between the plaintiff and any officer or agent of the United States authorized to make such agreement that the plaintiff should be paid for it. Nor does it appeal’ that this extra pitch was used prior to November 12, 1918. It further appears that while this claim was pending the plaintiff accepted in full payment the sum of $105,012.61 for 19,813.7 squares of roofing, which amount it received in settlement of the requisiton orders set out in the findings. Nor does it appear how much more pitch it was necessary to use owing to cold weather.
The fourth item of plaintiff’s claim is the cost of handling-materials which were not placed on the site of the work conveniently for plaintiff’s use. At the time the plaintiff entered into the negotiations which resulted in its being given a contract for the roofing of the sheds at the Charleston terminal it was shown a diagram or map from which it appeared that railroad’ tracks ran alongside the sheds which were to be roofed, but it was not told that these tracks had then been laid nor that they were ready for use, and when the president of the plaintiff company was at the site of the work on June 25,1918, he had the opportunity of finding out whether they were ready for use or not. When the tracks were laid the plaintiff was allowed to use them as far as practicable, though on some occasions plaintiff had to unload its materials at inconvenient places, and did have h> replace materials at some cost to itself, but that was one of the incidents to the performance of the work and not 'an expense which could properly be charged to the United States. Moreover, no demand for payment was made at the time and no agreement was made by any authorized officer or agent of the Government with the plaintiff whereby the plaintiff was to be paid by the United States for handling these materials.
*191 The fifth item of the claim is for expense incurred by the plaintiff for replacing roofing which had been blown off by reason of some one removing strips and boards which secured temporarily roofing already placed; the roofing blown off had to be replaced, .and the cost of replacing it was $243. No agreement was made by any officer or agent authorized to make such agreement with the plaintiff at the time the roofing was replaced, or later, whereby the plaintiff was to be paid by the United States for replacing this roofing. It does not appear that this transaction occurred prior to November 12, 1918.
The above are the items which make up the plaintiff’s claim of $5,209.83. All these claims were pending and were being pressed by the plaintiff when on September 5, 1919, it accepted in full settlement the sum of $105,012.61.
The plaintiff, however, has elected to treat this claim as separate and distinct from its claim for the performance of the work under its contract. If it is distinct, then it can only be allowed if it meets the conditions which are specifically provided for in the Dent Act. It does not meet those conditions. No agreement “ express or implied ” was made with the plaintiff by any officer or agent of the Government authorized to make such agreement whereby the plaintiff was to be paid by the United States for the items which make up the claim sued on.
It seems to be assumed by the plaintiff that the relief afforded under the Dent Act includes all damages which may arise during the progress of the work contracted for, and that it is not necessary that there should be an agreement “express or implied” between the plaintiff and an officer or agent acting under the authority of the Secretary of War or of the President when the amount expended or the services rendered are incidental to and not a part of the expenditures or services contemplated by the original contract between the parties. As in the case at bar, the plaintiff contends that by virtue of the orders it received to perform this work a promise was implied that it should be paid for any extra work clone- or for any incidental expense it might incur by reason of delays to which it might be put by the action of the Government in the execution of *192 another contract. We do not think that such principles can be invoked to render the Government liable under the Dent Act.
No implied agreement contemplated by this act as a basis for compensation can be inferred from the facts and circumstances which gave rise to the claim asserted here by the plaintiff. In order to have a recovery under the Dent Act, the implied agreement must be such an one as is defined by the Supreme Court of the United States in the case of Baltimore & Ohio R. R. Co. v. United States, 261 U. S. 592, 597. See also Baltimore & Ohio R. R. Co. v. United States, 261 U. S. 385, 387.
The petition must be dismissed. It is so ordered.
Graham, Judge; DowNet, Judge; Booth, Judge; and Campbell, Chief Justice, concur.